1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| OSCAR LUNA, | ) | CV F 95-05036 AWI |
| | ) | |
| Petitioner, | ) | ORDER DENYING |
| | ) | PETITIONER'S MOTION FOR |
| v. | ) | WRIT OF AUDITA QUERELA |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

18    In this case, petitioner Oscar Luna ("Petitioner") seeks relief under a writ of *audita*

19  *querela* from the sentence of 360 months that was imposed by this court on March 10, 1997,

20  following a jury verdict of guilty to one count of conspiracy to distribute marijuana, and one

21  count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. Sections 841 and

22  846.  Petitioner is essentially requesting a re-sentencing pursuant to the Supreme Court's

23  decision in United States v. Booker, 543 U.S. 220, 125 S.Ct 738 (2005).  For the reasons that

24  follow, Petitioner's motion for a writ of *audita querela* will be denied.

25                    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

26    Petitioner, along with co-defendant Wayne Peterson ("Peterson"), was convicted by a jury

27  on November 14, 1996.  Petitioner was sentenced on March 10, 1997, to 240 months for

28  conspiracy to distribute marijuana, and 360 months for conspiracy to distribute

methamphetamine, to be served concurrently.  Peterson was sentenced to 420 months for

conspiracy to distribute methamphetamine on March 10, 1997.  Peterson was granted a new trial

on appeal.  Peterson subsequently entered into a plea agreement and was sentenced to 144

months of imprisonment on February 22, 1999, for three counts of using a communications

facility in a drug trafficking offense in violation of 21 U.S.C. § 843.  Petitioner's conviction and

sentence were affirmed by the Ninth Circuit on September 22, 1999.  Petitioner's initial  28

U.S.C. § 2255 motion[1] was denied by this court on July 24, 2000.  The district court's denial was

affirmed by the Ninth Circuit on February 25, 2002.  The Supreme Court denied Certiorari on

October 7, 2002.  Petitioner's three subsequent applications to the Ninth Circuit for authorization

to file a second or successive Section 2255 motion pursuant to new rules of constitutional law

announced by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), Booker, and

Gonzalez-Lopez, 548 U.S. 140 (2006), were denied on August 17, 2001, January 31, 2006, and

October 18, 2006 respectively.  Petitioner filed a Section 2241 habeas corpus motion with the

Supreme Court on June 22, 2007, which was denied on October 15, 2007.  Petitioner has not

provided, nor is the court aware of, any order from the Ninth Circuit granting Petitioner

authorization to file a successive Section 2255 petition.

## LEGAL STANDARD

"*Audita querela*, literally 'the complaint having been heard,' is a common law writ used

to attack a judgment that was correct when rendered, but that later became incorrect because of

circumstances that arose after the judgment was issued."  Carrington v. United States, 503 F.3d

888, 890 n.2 (9th Cir. 2007).  "The writ [of *audita querela*], or a modern equivalent, at least

potentially survives in the federal criminal context . . . under the Supreme Court's decision in

United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954) and the All Writs

Act."  U.S. v. Valdez-Pacheco, 237 F.3d 1077, 1079 (9th Cir. 2001).  "[The Ninth Circuit has]

---

[1] References to section numbers hereinafter refer to sections of Title 28 of the United States Code unless otherwise specified.

stated subsequently that Morgan stands for the proposition that the common law writs, such as *coram nobis* and *audita querela*, are available to fill the interstices of the federal postconviction remedial framework." Id. (quoting Doe v. INS, 120 F.3d 200, 203 (9th Cir. 1997)) (internal quotations omitted).  However, "[a] prisoner may not circumvent [the] valid congressional limitations on collateral attacks [in the Antiterrorism and Effective Death Penalty Act ("AEDPA")] by asserting that those very limitations create a gap in the postconviction remedies that must be filled by the common law writs."  Id. (citations omitted); see also In re Davenport, 147 F.3d 605, 608 (7th Cir. 1998) (concluding that if the AEDPA foreclosed the use of 28 U.S.C. §§ 2241 and 2255 by federal prisoners, "it would be senseless to suppose that Congress permitted [federal prisoners] to pass through the closed door [by way of the All Writs Act] simply by changing the number 2241 to 1651 on their motions).[2]

Section 2255, as amended by the AEDPA, states:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain:
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

"A writ of *audita querela* is not an available remedy where the claims raised would be cognizable in a § 2255 habeas petition."  Carrington, 503 F.3d at 890 (citing Valdez-Pacheco 237 F.3d at 1080).  "If the petitioner does not first obtain [the Ninth Circuit's] authorization under § 2244(b)(3)(A), the district court lacks jurisdiction to consider the second or successive application."  U.S. v. Lopez, 534 F.3d 1027, 1033 (9th Cir. 2008) (citing Burton v. Stewart, 549

---

[2] The court notes that Section 2255 contains its own "gap filling" provisions, allowing federal prisoners to file habeas corpus petitions under 28 U.S.C. § 2241 if § 2255 is otherwise inadequate or ineffective.  Valdez-Pacheco, 237 F.3d at 1080 n.4; Lorensten v. Hood, 223 F.3d 950, 953 (9th Cir. 2000).  In general "a motion under 28 U.S.C. § 2255 is the exclusive means by which a federal prisoner may test the legality of his detention."  Stephens, 464 F.3d at 897 (citations omitted).  The only exception is the inadequate or ineffective "escape hatch" of § 2255, which is available only when "a petitioner (1) makes a claim of actual innocence, and (2) has not had an "unobstructed procedural shot" at presenting that claim."  Id. at 898.

1  U.S. 147 (2007) (per curiam)).

2  **DISCUSSION**

3  Although Petitioner moves this court for a writ of *audita querela*, the arguments

4  Petitioner proffers in favor of his motion are essentially the same issues Petitioner raised on

5  direct appeal, and in subsequent Section 2255 motions or requests for authorization to file

6  successive Section 2255 motions.  The only significant difference between Petitioner's past

7  motions and the current petition is Petitioner's extensive reliance and factual comparison to

8  Kessack v. United States, No. CV-05-1828-TSZ, 2008 WL 189679 (W.D. Wash. Jan. 18, 2008)

9  ("Kessack I"), a district court decision from the Western District of Washington granting a writ

10  of *audita querela* and ordering the re-sentencing of a petitioner that presented similar Booker

11  issues.  District courts in other circuits that have faced similar *audita querela* petitions since

12  Kessack I have all declined to follow the court's reasoning on the availability of a writ of *audita*

13  *querela*.  See, e.g.,  Neuhausser v. U.S., 2009 WL 961558 (S.D. Ohio Apr. 8, 2009); Gore v.

14  U.S., 2009 WL 512160 (D.N.J. Feb. 27, 2009); U.S. v. Laury, 2008 WL 2940805 (N.D.Tex. Jul.

15  30, 2008).  First, the  Court addresses whether Petitioner's motion should be construed as a

16  motion under Section 2255 and examines the reasoning of the district court in Kessack I.[3]

17  In Kessack I, the district court distinguished Valdez-Pacheco and Carrington, and held

18  that under the Supreme Court's decision in Morgan *audita querela* relief was available and

19  appropriate because:

20  (1)[Petitioner had] sound reasons for failing to seek earlier relief under 28 U.S.C.
   § 2255, primarily the fact that Booker announced a new rule of [C]onstitutional

21  law in 2005, (2) truly extraordinary circumstances and equities are presented that
   distinguish [petitioner] from other defendants sentenced prior to Booker, and (3)

22  re-sentencing [petitioner] under the now-advisory Federal Sentencing Guidelines
   is necessary to achieve fundamental justice. [Petitioner] was deprived of due

23

24  _____

25  [3] Petitioner's request for judicial notice of the decisions in Kessack I, No. CV-05-1828-
   TSZ, 2008 WL 189679, and United States v. Kessack, No. CR89-272Z ("Kessack II"), is

26  granted.  Petitioner's request for judicial notice of all "papers, pleadings, and documents" filed in
   association with the court's decisions in the above two cases is granted to the extent the public

27  records show they were filed, but not for the truth of the statements contained in those
   documents.

28  4

process and a right to a jury trial when he was sentenced to 30 years in prison based upon a mandatory Guidelines sentencing system in which findings of fact made by a judge, on a preponderance of evidence standard, and not a jury, substantially increased the maximum sentence.

Kessack, 2008 WL 189679 at *5.

The court in Kessack I distinguished the Ninth Circuit's decision in Valdez-Pacheco, by highlighting that the petitioner in Valdez-Pacheco could have raised his claims in a Section 2255 motion whereas Kessack could not. The court in Kessack distinguished Carrington on the grounds that: (1) "[t]he Ninth Circuit . . . expressly recognized that relief could be 'available in a particular case upon a showing of truly extraordinary circumstances and equities'" and (2) "[t]he Ninth Circuit in Carrington . . . does not address United States v. Morgan." Kessack, 2008 WL 189679 at *5. In Carrington the Ninth Circuit affirmed a district court's determination that *audita querela* relief was unavailable because "statutory limits on second or successive habeas petitions do not create a 'gap' in the post-conviction landscape that can be filled with the common law writs." Carrington, 503 F.3d at 890. The Ninth Circuit in Carrington then continued on to consider whether recalling the court's mandate was appropriate or necessary to do justice. The quote the Kessack I court relies on, however, is not part of the Ninth Circuit's discussion on *audita querela* relief or even in their overall conclusion, but in the concluding paragraph of the Ninth Circuit's discussion on whether recalling their mandate was appropriate.

This Court does not interpret Carrington as "expressly" creating a special case under which *audita querela* relief would be available even when the claim to relief is cognizable as a Section 2255 motion. Moreover, the Court does not find that the Ninth Circuit's holding in Carrington is lacking for not directly addressing Morgan as Morgan is discussed in the Ninth Circuit's decision in Valdez-Pacheco upon which the court in Carrington relies. Carrington, 503 F.3d at 890; Valdez-Pacheco, 237 F.3d at 1079. Thus, the Court does not find persuasive the reasoning of the court in Kessack and further does not find Carrington distinguishable from the case at bar. The court now turns to the merits of Petitioner's own arguments for the availability of the writ of *audita querela*.

1    Petitioner also relies on the Supreme Court's decision in <u>Morgan</u> and contends the

2    equities and circumstances of Petitioner's case requires this court to grant relief so that a wrong

3    will not stand, which an available remedy could right.  <u>Morgan</u> 346 U.S. at 512.  Petitioner,

4    relying on <u>United States v. Ray</u>,  930 F.2d 1368, 1372-73 (9th Cir. 1990), asserts that sentence

5    disparity arising under "different legal regimes" has already been held to be an extraordinary

6    circumstance.  In <u>Ray</u> the Ninth Circuit upheld a 15-year downward departure.  The court held

7    that when co-defendants are sentenced under different legal regimes, such as "the Ninth Circuit's

8    brief flirtation with rebellion in the <u>Gubiensio</u> case [invalidating the sentencing guideline]," a

9    district court can find a "highly unusual" circumstance not accounted for by the guidelines and

10   depart.  <u>Ray</u> at 1372.  <u>Ray</u>'s holding, however, has been held to be valid only on the narrow facts

11   of that case.  <u>U.S. v. Banuelos-Rodriguez</u>, 215 F.3d 969, 978 n.5 (9th Cir. 2000) (en banc).

12   Petitioner also compares his 18-year sentence disparity to his equally culpable co-

13   defendant to the 20-year disparity between co-defendants, which was corrected in <u>Kessack I</u>.  As

14   in <u>Kessack I</u>, Petitioner was sentenced under mandatory guidelines based on findings of fact

15   made by a judge on a preponderance of the evidence standard.  Petitioner also stresses that his

16   arguments during his trial and subsequent appeals and Section 2255 motions presaged the later

17   decisions of the Supreme Court in <u>Apprendi</u>, <u>Booker</u> and <u>Gonzalez-Lopez</u>.

18   Although equities in favor of re-sentencing certainly exist in Petitioner's case, they

19   cannot overcome the Ninth Circuit's ban on using common law writs to avoid the limitations on

20   successive Section 2255 motions.  As Judge Noonan noted in his concurrence in <u>Carrington</u>,

21   although Petitioner was convicted and sentenced using mechanisms that have since been

22   determined to be unconstitutional, they were the law of the land at the time of Petitioner's

23   crimes–"no injustice is done" by denying re-sentencing.  <u>Carrington</u> 503 F.3d at 894-95 (Noonan,

24   J., concurring).   "Only the Supreme Court has both the power and the authority to create a rule

25   of retroactivity when a new rule of constitutional law, if applied retroactively, would lessen the

26   penalty given."  <u>Id.</u> at 895.

27

28                                          6

1    This Court finds the court's reasoning in Kessack I unpersuasive and concludes the law of

2  this circuit precludes the use of a writ of *audita querela* to circumvent the statutory limitations of

3  the AEDPA.  Petitioner has provided no other grounds upon which the Court could grant a writ

4  of *audita querela* under the case law of the Ninth Circuit.  The Court therefore construes

5  Petitioner's request for writ of *audita querela* as a motion to vacate, set aside, or correct a

6  sentence under Section 2255.  "If the petitioner does not first obtain [the Ninth Circuit's]

7  authorization under § 2244(b)(3)(A), the district court lacks jurisdiction to consider the second or

8  successive application."  Lopez, 534 F.3d at 1033.  Petitioner has not provided, nor is the court

9  aware of, any order authorizing this motion pursuant to Section 2255.  This Court therefore lacks

10  jurisdiction to consider Petitioner's motion and must dismiss the case.

11                                    **CONCLUSION AND ORDER**

12       THEREFORE, the Court ORDERS that Petitioner's motion to vacate, set aside, or correct

13  a sentence pursuant to 28 U.S.C. § 2255 is therefore DENIED.  The Clerk of the Court shall

14  CLOSE THE CASE.

15

16

17

18  IT IS SO ORDERED.

19  **Dated:    July 27, 2009**                    _____/s/ Anthony W. Ishii_____
                                        CHIEF UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28                                           7